# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>**BASIN WATER, INC., et al.,**[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 09-12526 (MFW)<br><br>Jointly Administered<br><br>Ref. Docket No. 16 and 121 |

## ORDER (A) APPROVING ASSET PURCHASE AGREEMENT AND AUTHORIZING THE SALE OF ASSETS OF DEBTORS OUTSIDE THE ORDINARY COURSE OF BUSINESS; (B) AUTHORIZING THE SALE OF ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES; (C) AUTHORIZING THE ASSUMPTION AND SALE AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES; AND (D) GRANTING RELATED RELIEF

Upon the motion (the "Sale Motion") of Basin Water, Inc. and Basin Water-MPT,

Inc., the debtors and debtors in possession in the above cases (the "Sellers") for the entry of an

order pursuant to sections 105, 363 and 365 of Title 11 of the United States Code (the

"Bankruptcy Code") and Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules") authorizing the Debtors to, *inter alia*, (i) enter into that

certain Asset Purchase Agreement, between Amplio Filtration Holdings, Inc., a Delaware

corporation ("Buyer"), and the Sellers (the "Agreement," in the form previously filed with the

Court, as amended by the Amendment No. 1 to the Agreement, attached hereto as Exhibit 1), (ii)

sell substantially all of their assets free and clear of all Encumbrances,[2] with such sale to be in

accordance with the terms and conditions of the Agreement; (iii) assume, sell and assign certain

executory contracts and unexpired leases to the Buyer; and (iv) granting related relief; and this

Court having entered an order dated July 29, 2009 (the "Bidding Procedures Order") [Docket

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Basin Water, Inc. (3881) and Basin Water-MPT, Inc. (9465). The corporate headquarters address for all of the Debtors is Pittsburgh Ave., Suite 210, Rancho Cucamonga, CA 91730.

[2]      Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Sale Motion, the Agreement, or the Bidding Procedures Order (as defined herein below).

No. 57] authorizing the Debtors to conduct, and approving the terms and conditions of, the Auction and bid procedures ("Bid Procedures") to consider higher or otherwise better offers for the Assets, establishing a date for the Auction, and approving, *inter alia*, (i) the Bid Procedures in connection with the Auction; (ii) the form and manner of notice of the Auction and Bid Procedures; (iii) procedures relating to certain Assumed Section 365 Contracts, including notice of proposed prepetition cure amounts; and (iv) the Expense Reimbursement and the Break-up Fee; and the Court having established the date of the Sale Hearing; and the Court having jurisdiction to consider the Sale Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157(b)(2) and 1334; and consideration of the Sale Motion, the relief requested therein, and the responses thereto, if any, being a core proceeding in accordance with 28 U.S.C. § 157(b); and the appearance of all interested parties and all responses and objections, if any, to the Sale Motion having been duly noted in the record of the Sale Hearing; and upon the record of the Sale Hearing, and all other pleadings and proceedings in this case, including the Sale Motion; and it appearing that the relief requested in the Sale Motion is in the best interests of the Debtors, their estates, their creditors and all other parties in interest; and after due deliberation and sufficient cause appearing therefor;

IT IS HEREBY FOUND, DETERMINED AND CONCLUDED THAT:[3]

        A.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

---

[3] All findings of fact and conclusions of law announced by the Court at the Sale Hearing in relation to the Sale Motion are hereby incorporated herein to the extent not inconsistent herewith.

B.     To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.     The Court has jurisdiction over this matter and over the property of the Debtors, including the Assets to be sold, transferred or conveyed pursuant to the Agreement, and their respective estates pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of these chapter 11 cases and the Sale Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

D.     The statutory predicates for the relief sought in the Sale Motion and the basis for the approvals and authorizations herein are (i) Bankruptcy Code §§ 102, 105, 363, 365, 1123, 1141 and 1146, and (ii) Bankruptcy Rules 2002, 6004, 6006 and 9014.

E.     This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). To any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure as made applicable by Rule 7054 of the Federal Rules of Bankruptcy Procedure, the Court expressly finds that there is no just reason for delay in the implementation of this Order, and expressly directs entry of judgment as set forth herein.

F.     As evidenced by the affidavits of service filed with the Court, proper, timely, adequate, and sufficient notice of the Sale Motion, the Auction, assumption and assignment of the Assumed Section 365 Contracts, and the Sale Hearing have been provided in accordance with Bankruptcy Code §§ 102(1) and 363(b), Bankruptcy Rules 2002, 6004, 9006, 9007, 9008 and 9014, the local rules of this Court, the procedural due process requirements of the United States Constitution, and in compliance with the Bidding Procedures Order.

G.     A reasonable opportunity to object or be heard regarding the requested relief has been afforded to all interested persons and entities.

H.     The Debtors have demonstrated a sufficient basis and the existence of exigent circumstances for them to enter into the Agreement, sell the Assets and assume and assign the Assumed Section 365 Contracts under Bankruptcy §§ 363, 365, 1123 and 1141, and such actions are appropriate exercises of the Debtors' business judgment and in the best interests of the Debtors, their estates and their creditors.

I.     The Bid Procedures set forth in the Bidding Procedures Order were, as implemented by the Debtors, non-collusive, substantively and procedurally fair to all parties and were the result of arms length negotiations between the Debtors and the Buyer.

J.     The Debtors and their professionals have complied, in good faith, in all respects with the Bidding Procedures Order.  As demonstrated by the testimony and other evidence proffered or adduced at the Sale Hearing through marketing efforts and a competitive sale process conducted in accordance with the Bidding Procedures Order, the Debtors (i) afforded interested potential Buyers a full, fair and reasonable opportunity to qualify as bidders and submit their highest or otherwise best offer to purchase all of the Debtors' assets, and (ii) provided potential Buyers, upon request, sufficient information to enable them to make an informed judgment on whether to bid on the Assets.

K.     The Bidding Procedures obtained the highest value for the Assets for the Debtors and their estates.

L.     The offer of the Buyer, upon the terms and conditions set forth in the Agreement, including the form and total consideration to be realized by the Debtors pursuant to the Agreement, (i) is the highest and best offer received by the Debtors; (ii) is fair and

4

reasonable; (iii) is in the best interests of the Debtors' creditors and estates; (iv) constitutes full and adequate consideration and reasonably equivalent value for the Assets; and (v) will provide a greater recovery for the Debtors' creditors and other interested parties than would be provided by any other practically available alternative.

M.      The Buyer is not an "insider" or "affiliate" of the Debtors as those terms are defined in the Bankruptcy Code. The Buyer is a Buyer in good faith, as that term is used in the Bankruptcy Code and the decisions thereunder, and is entitled to the protections of Bankruptcy Code §§ 363(m) and (n) with respect to all of the Assets. The Agreement was negotiated and entered into in good faith, based upon arm's length bargaining, and without collusion or fraud of any kind. Neither the Debtors nor the Buyer has engaged in any conduct that would prevent the application of Bankruptcy Code § 363(m) or cause the application of or implicate Bankruptcy Code § 363(n) to the Agreement or to the consummation of the sale transaction and transfer of the Assets and Assumed Section 365 Contracts to Buyer. The Buyer is entitled to all the protections and immunities of Bankruptcy Code § 363(m).

N.      The Debtors have full corporate power and authority to execute the Agreement and all other documents contemplated thereby, and the sale of the Assets has been duly and validly authorized by all necessary corporate authority by the Debtors to consummate the transactions contemplated by the Agreement. No consents or approvals, other than as may be expressly provided for in the Agreement, are required by the Debtors to consummate such transactions.

O.      The Debtors have advanced sound business reasons for seeking to enter into the Agreement and to sell and/or assume and sell and assign the Assets, as more fully set forth in the Sale Motion and as demonstrated at the Sale Hearing, and it is a reasonable exercise

of the Debtors' business judgment to sell the Assets and to consummate the transactions

contemplated by the Agreement. Notwithstanding any requirement for approval or consent by

any person, the transfer of the Assets to the Buyer and the assumption and assignment of the

Assumed Section 365 Contracts is a legal, valid and effective transfer of the Assets and any

Assumed Section 365 Contracts.

P.    The terms and conditions of the Agreement, including the consideration to

be realized by the Debtors pursuant to the Agreement, are fair and reasonable, and the

transactions contemplated by the Agreement are in the best interests of the Debtors' estates.

Q.    Except as otherwise provided in the Agreement, the Assets shall be sold

free and clear of all Liens, Claims and Encumbrances with such Liens, Claims and

Encumbrances to attach to the consideration to be received by the Debtors in the same priority

and subject to the same defenses and avoidability, if any, as before the Closing, and Buyer would

not enter into the Agreement to purchase the Assets otherwise.

R.    The transfer of the Assets to Buyer will be a legal, valid and effective

transfer of the Assets, and, except as may otherwise be provided in the Agreement, shall vest

Buyer with all right, title and interest of the Debtors to the Assets free and clear of any and all

Liens, Claims and Encumbrances. Except as specifically provided in the Agreement or this

Order, the Buyer shall not assume or become liable for any Liens, Claims and Encumbrances

relating to the Assets being sold by the Debtors.

S.    The transfer of the Assets to the Buyer free and clear of all Liens, Claims

and Encumbrances will not result in any undue burden or prejudice to any holders of any Liens,

Claims and Encumbrances as all such Liens, Claims and Encumbrances of any kind or nature

whatsoever shall attach to the net proceeds of the sale of the Assets received by the Debtors in

the order of their priority, with the same validity, force and effect which they now have as against the Assets and subject to any claims and defenses the Debtors or other parties may possess with respect thereto. All persons having Liens, Claims or Encumbrances of any kind or nature whatsoever against or in any of the Debtors or the Assets shall be forever barred estopped and permanently enjoined from pursuing or asserting such Liens, Claims or Encumbrances against the Buyer, any of its assets, property, successors or assigns, or the Assets.

T. The Debtors may sell the Assets free and clear of all Liens, Claims and Encumbrances of any kind or nature whatsoever because, in each case, one or more of the standards set forth in Bankruptcy Code § 363(f) has been satisfied. Those (i) holders of Liens, Claims and Encumbrances and (ii) non-debtor parties, who did not object, or who withdrew their objections, to the sale of the Assets and the Sale Motion are deemed to have consented pursuant to Bankruptcy Code § 363(f)(2). Those holders of Liens, Claims and Encumbrances who did object fall within one or more of the other subsections of Bankruptcy Code § 363(f) and are adequately protected by having their Liens, Claims and Encumbrances, if any, attach to the proceeds of the sale of the Assets ultimately attributable to the property against or in which they claim or may claim any Claims and Encumbrances.

U. Not selling the Assets free and clear of all Liens, Claims and Encumbrances would adversely impact the Debtors' estates, and the sale of Assets other than one free and clear of all Liens, Claims and Encumbrances would be of substantially less value to the Debtors' estates.

V. The Debtors and the Buyer have, to the extent necessary, satisfied the requirements of Bankruptcy Code § 365, including Bankruptcy Code §§ 365(b)(1)(A), (B) and 365(f), in connection with the sale and the assumption and assignment of the Assumed Section

7

365 Contracts. The Buyer has demonstrated adequate assurance of future performance with respect to the Assumed Section 365 Contracts pursuant to Bankruptcy Code § 365(b)(1)(C). The assumption and assignment of the Assumed Section 365 Contracts pursuant to the terms of this Order is integral to the Agreement and is in the best interests of the Debtors, their estates, their creditors and other parties in interest, and represents the exercise of sound and prudent business judgment by the Debtors.

W.     The Assumed Section 365 Contracts are assignable notwithstanding any provisions contained therein to the contrary. Through the provisions of the Agreement, the Debtors have provided for the cures and/or other payments or actions required to assume and assign the Assumed Section 365 Contracts to the Buyer. The Buyer has provided adequate assurance of its future performance under the Assumed Section 365 Contracts and the proposed assumption and assignment of the Assumed Section 365 Contracts.

X.     The Buyer will be acting in good faith, pursuant to Bankruptcy Code § 363(m), in closing the transactions contemplated by the Agreement at any time on or after the entry of this Order and cause has been shown as to why this Order should not be subject to the stay provided by Bankruptcy Rules 6004(g) and 6006(d).

Y.     The transactions contemplated under the Agreement do not amount to a consolidation, merger or *de facto* merger of the Buyer and the Debtors and/or the Debtors' estates, there is not substantial continuity between the Buyer and the Debtors, there is no continuity of enterprise between the Debtors and the Buyer, the Buyer is not a mere continuation of the Debtors or their estates, there is no common identity of incorporators, directors or stockholders between the Debtors and Buyer, Buyer is not holding itself out to the public as a

8

continuation of the Debtors and the Buyer does not constitute a successor to the Debtors or their estates.

Z. The total consideration provided by the Buyer for the Assets is the highest and best offer received by the Debtors, and the Purchase Price constitutes (a) reasonably equivalent value under the Bankruptcy Code and the Uniform Fraudulent Transfer Act, (b) fair consideration under the Uniform Fraudulent Conveyance Act and (c) reasonably equivalent value, fair consideration and fair value under any other applicable laws of the United States, any state, territory or possession, or the District of Columbia, for the Assets.

AA. Time is of the essence in consummating the sale. In order to maximize the value of the Assets, it is essential that the sale of the Assets occur within the time constraints set forth in the Agreement. Accordingly, there is cause to lift the stays contemplated by Bankruptcy Rules 6004 and 6006.

BB. The Buyer shall have no obligations with respect to any liabilities of the Debtors other than the Assumed Obligations and its obligations under the Agreement.

CC. For purposes of section 363(b)(1) of the Bankruptcy Code, the Debtors have not, in connection with offering a product or service, disclosed to any individual a policy prohibiting the transfer of "personally identifiable information" (as defined in section 101(41A) of the Bankruptcy Code) about individuals to persons that are not affiliated with the Debtors.

DD. Notwithstanding any other provision of this Order, the Debtors have agreed that as of the date of this Order they do not have title to the 1000 GPM Photo Cat (BW #192) listed on Exhibit 2.01(a)(iii) to the Agreement (the "Unit"), but that Purifics ES Inc. ("Purifics"), the manufacturer of the Unit, holds title to it pending receipt of additional payments from the Debtors. The Debtors have further agreed that prior to the Closing Date they will pay

9

all outstanding amounts owed to Purifics for the Unit and any storage and insurance expenses incurred or to be incurred prior to transfer of title by Purifics.[4] The Debtors have further agreed that they will take title to the Unit at one of their docks within the United States. The Debtors have further agreed that they will pay all costs involved in preparing the Unit for shipping and in shipping the Unit (including, but not limited to, any necessary shipping insurance). The Debtors have further agreed that if they take title to the Unit in Canada, they will pay any and all applicable taxes imposed on Purifics as a result of title transfer within Canada. Purifics has agreed to transfer title to the Unit based under these conditions only.

NOW, THEREFORE, BASED UPON ALL OF THE FOREGOING, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

     1.    The relief requested in the Sale Motion is granted in its entirety, subject to the terms and conditions contained herein.

     2.    All objections, responses, and requests for continuance concerning the Sale Motion are resolved in accordance with the terms of this Order and as set forth in the record of the Sale Hearing. To the extent any such objection, response or request for continuance was not otherwise withdrawn, waived, or settled, it, and all reservations of rights contained therein, is overruled and denied.

     3.    Notice of the Sale Hearing was fair and equitable under the circumstances and complied in all respects with 11 U.S.C. § 102(1) and Bankruptcy Rules 2002, 6004 and 6006.

     4.    The sale of the Assets, the terms and conditions of the Agreement (including all schedules and exhibits affixed thereto), the bid by the Buyer and the transactions contemplated thereby be, and hereby are, authorized and approved in all respects.

---

[4] Currently, the Debtors owe the remaining $40,000 of the purchase price for the Unit and $2,550 related to

5. The sale of the Assets and the consideration provided by the Buyer under the Agreement is fair and reasonable and shall be deemed for all purposes to constitute a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law.

6. The Buyer is hereby granted and is entitled to all of the protections provided to a good faith Buyer under Bankruptcy Code § 363(m), including with respect to the transfer of the Assumed Section 365 Contracts as part of the sale of the Assets pursuant to Bankruptcy Code § 365 and this Order.

7. Subject to the terms of the Agreement, the Debtors will be, and hereby are, authorized, to assume, perform under, consummate and implement the terms of the Agreement together with any and all additional instruments and documents that may be reasonably necessary or desirable to implement and effectuate the terms of the Agreement, this Order and sale of the Assets contemplated thereby including, without limitation, deeds, assignments, stock powers and other instruments of transfer, and to take all further actions as may reasonably be requested by the Buyer for the purpose of assigning, transferring, granting, conveying and conferring to the Buyer, or reducing to possession any or all of the Assets or Assumed Obligations, as may be necessary or appropriate to the performance of the Debtors' obligations as contemplated by the Agreement, without any further corporate action or orders of this Court. The Buyer shall have no obligation to proceed with the Closing of the Agreement until all conditions precedent to its obligations to do so have been met, satisfied or waived.

8. The Debtors and each other person or entity having duties or responsibilities under the Agreement, any agreements related thereto or this Order, and their respective directors, officers, employees, members, agents, representatives, and attorneys, are

---

insurance costs incurred from April through September.

authorized and empowered and directed, subject to the terms and conditions contained in the Agreement, to carry out all of the provisions of the Agreement and any related agreements; to issue, execute, deliver, file, and record, as appropriate, the documents evidencing and consummating the Agreement, and any related agreements; to take any and all actions contemplated by the Agreement, any related agreements or this Order; and to issue, execute, deliver, file, and record, as appropriate, such other contracts, instruments, releases, indentures, mortgages, deeds, bills of sale, assignments, leases, or other agreements or documents and to perform such other acts and execute and deliver such other documents, as are consistent with, and reasonably necessary or appropriate to implement, effectuate, and consummate, the Agreement, any related agreements and this Order and the transactions contemplated thereby and hereby, all without further application to, or order of, the Court or further action by their respective directors, officers, employees, members, agents, representatives, and attorneys, and with like effect as if such actions had been taken by unanimous action of the respective directors, officers, employees, members, agents, representatives, and attorneys of such entities.

9.    Effective as of the Closing, (a) the sale of the Assets by the Debtors to the Buyer shall constitute a legal, valid and effective transfer of the Assets notwithstanding any requirement for approval or consent by any person and shall vest Buyer with all right, title and interest of the Debtors in and to the Assets, free and clear of all Claims, Liens and Encumbrances of any kind, pursuant to Bankruptcy Code § 363(f), and (b) the assumption of any Assumed Obligations by the Buyer shall constitute a legal, valid and effective delegation of any Assumed Obligations to the Buyer and shall divest the Debtors of all liability with respect to any Assumed Obligations.

12

10.     The sale of the Assets is not subject to avoidance pursuant to Bankruptcy Code § 363(n).

11.     Except to the extent specifically provided in the Agreement, upon the closing, the Debtors shall be, and hereby are, authorized, empowered and directed, pursuant to Bankruptcy Code §§ 105, 363(b), to sell the Assets, including those within the Assignment and Assumption Agreement, to the Buyer.  The sale of the Assets shall vest Buyer with all right, title and interest of the Debtors to the Assets free and clear of any and all Claims, Liens and Encumbrances and other liabilities and claims, whether secured or unsecured, choate or inchoate, filed or unified, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, disputed or undisputed, or known or unknown, whether arising prior to or subsequent to the Petition Date, whether imposed by agreement, understanding, law, equity or otherwise, with all such Claims, Liens and Encumbrances to attach only to the proceeds of the sale with the same priority, validity, force, and effect, if any, as they now have in or against the Assets, subject to all claims and defenses the Debtors may possess with respect thereto.  Following the Closing Date, no holder of any Claims, Liens and Encumbrances in the Assets shall interfere with the Buyer's use and enjoyment of the Assets based on or related to such Claims, Liens and Encumbrances, or any actions that the Debtors may take in their chapter 11 cases and no person shall take any action to prevent, interfere with or otherwise enjoin consummation of the transactions contemplated in or by the Agreement or this Order.

12.     The provisions of this Order authorizing the sale of the Assets free and clear of Liens, Claims and Encumbrances, other than Assumed Obligations, shall be self-executing, and neither the Debtors nor the Buyer shall be required to execute or file releases,

13

termination statements, assignments, consents, or other instruments in order to effectuate, consummate and implement the provisions of this Order.

13.     Upon the Closing Date, the Debtors' creditors are authorized and directed to execute such documents and take all other actions as may be necessary to release any Encumbrances of any kind against the Assets, as such Encumbrances may have been recorded or may otherwise exist.  If any person or entity that has filed financing statements or other documents or agreements evidencing any Liens, Claims or Encumbrances in or against the Assets shall not have delivered to the Debtors prior to the Closing after request therefor, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of all such Liens, Claims or Encumbrances that the person or entity has with respect to the Assets, the Debtors are hereby authorized and directed to execute and file such statements, and empowered to perform under, all instruments, releases and other documents on behalf of the person or entity with respect to such Assets prior to the Closing, and the Buyer is authorized to file such documents after Closing.

14.     To the greatest extent available under applicable law, the Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, registration and governmental authorization or approval of the Debtors with respect to the Assets, and all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been, and hereby are, directed to be transferred to the Buyer as of the Closing Date.

15.     All of the Debtors' interests in the Assets to be acquired by the Buyer under the Agreement shall be, as of the Closing Date and upon the occurrence of the Closing, transferred to and vested in the Buyer.  Upon the occurrence of the Closing, this Order shall be considered and constitute for any and all purposes a full and complete general assignment,

14

conveyance and transfer of the Assets acquired by the Buyer under the Agreement and/or a bill of sale or assignment transferring good and marketable, indefeasible title and interest in the Assets to the Buyer.

16.     To the extent permitted by applicable law, except as expressly provided in the Agreement, the Buyer is not assuming nor shall it or any affiliate of Buyer be in any way liable or responsible, as a successor or otherwise, for any liabilities, debts, or obligations of the Debtors in any way whatsoever relating to or arising from the Debtors' ownership or use of the Assets prior to the consummation of the transactions contemplated by the Agreement, or any liabilities calculable by reference to the Debtors or their operations or the Assets, or relating to continuing or other conditions existing on or prior to consummation of the transactions contemplated by the Agreement, which liabilities, debts, and obligations are hereby extinguished insofar as they may give rise to liability, successor or otherwise, against Buyer or any affiliate of the Buyer.

17.     Except as otherwise provided in the Agreement, upon the Closing Date, each of the Debtors' creditors is authorized and directed to execute such documents and take all other actions as may be necessary to release their respective Liens or Claims against the Assets, if any, as may have been recorded or may otherwise exist.

18.     Except as otherwise expressly provided in the Agreement, all persons or entities presently on or after the Closing Date in possession of some or all of the Assets are directed to surrender possession of the Assets to the Buyer on the Closing Date, or at such time thereafter as the Buyer may request.

19.     Subject to the terms of the Agreement, the assumption by the Debtors of the Assumed Section 365 Contracts and the sale and assignment of such agreements to the

15

Buyer, as provided for or contemplated by the Agreement, be, and hereby is, authorized and approved pursuant to Bankruptcy Code §§ 363 and 365.

20.     The Assumed Section 365 Contracts shall be deemed valid and binding and in full force and effect and assumed by the Debtors and sold and assigned to the Buyer at the Closing, pursuant to Bankruptcy Code §§ 363 and 365, subject only to the assumption of payment and payment of all prepetition Cure Amounts required to be paid to assume and assign the Assumed Section 365 Contracts to the Buyer.

21.     Upon the Closing, in accordance with Bankruptcy Code §§ 363 and 365, the Buyer shall be fully and irrevocably vested in all right, title and interest of each Assumed Section 365 Contract. The Debtors shall reasonably cooperate with, and take all actions reasonably requested by, the Buyer to effectuate the foregoing.

22.     Pursuant to Bankruptcy Code §§ 365(b)(1)(A) and (B), and except as otherwise provided in this Order, parties to any Assumed Section 365 Contracts shall promptly receive payment of the prepetition Cure Amounts, if any, set forth in the notice served by the Debtors on each of the parties to the Assumed Section 365 Contracts. The prepetition Cure Amounts are hereby fixed at the amounts set forth in the notice served by the Debtors, or the amounts set forth on the record of the Sale Hearing, as the case may be, and the non-debtor parties to the Assumed Section 365 Contracts are forever bound by such prepetition Cure Amounts.

23.     All defaults or other obligations under the Assumed Section 365 Contracts arising prior to the Closing (without giving effect to any acceleration clauses or any default provisions of the kind specified in Bankruptcy Code § 365(b)(2)) shall be deemed cured by payment  of the prepetition Cure Amounts.

24.     Any provision in any Assumed Section 365 Contract that purports to declare a breach, default or payment right as a result of an assignment or a change of control in respect of the Debtors is unenforceable, and all Assumed Section 365 Contracts shall remain in full force and effect, subject only to payment of the appropriate prepetition Cure Amount, if any. No sections or provisions of any Assumed Section 365 Contract that purports to provide for additional payments, penalties, charges, or other financial accommodations in favor of the non-debtor third party to the Assumed Section 365 Contracts shall have any force and effect with respect to the sale transaction and assignments authorized by this Order, and such provisions constitute unenforceable anti-assignment provisions under Bankruptcy Code § 365(f) and/or are otherwise unenforceable under Bankruptcy Code § 365(e) and no assignment of any Assumed Section 365 Contract pursuant to the terms of the Agreement shall in any respect constitute a default under any Assumed Section 365 Contract.  The non-Debtor party to each Assumed Section 365 Contract shall be deemed to have consented to such assignment under Bankruptcy Code § 365(c)(1)(B), and the Buyer shall enjoy all of the rights and benefits under each such Assumed Section 365 Contract as of the applicable date of assumption without the necessity of obtaining such non-Debtor party's written consent to the assumption or assignment thereof.

25.     Pursuant to Sections 105(a), 363 and 365 of the Bankruptcy Code, all parties to the Assumed Section 365 Contracts are forever barred and enjoined from raising or asserting against Buyer any assignment fee, default, breach or claim or pecuniary loss, or condition to assignment, arising under or related to the Assumed Section 365 Contract existing as of the Closing or arising by reason of the closing, except for any liabilities first arising after the Closing and being assumed by Buyer under the Agreement.

26.     The Buyer has satisfied all requirements under Bankruptcy Code §§ 365(b)(1) and 365(b)(2) to provide adequate assurance of future performance under the Assumed Section 365 Contracts.

27.     The Debtors and their estates shall be relieved of any liability for any breach of any of the Assumed Section 365 Contracts occurring from and after Closing, pursuant to and in accordance with Bankruptcy Code § 365(k).

28.     Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement and this Order.

29.     The Buyer has not assumed or is otherwise not obligated for any of the Debtors' liabilities other than the Assumed Obligations as set forth in the Agreement, and the Buyer has not purchased any of the Excluded Assets. Consequently, all persons, Governmental Units (as defined in Bankruptcy Code §§ 101(27) and 101(41)) and all holders of Claims, Liens or Encumbrances based upon or arising out of liabilities retained by the Debtors are hereby enjoined from taking any action against the Buyer or the Assets to recover any Claims, Liens or Encumbrances or on account of any liabilities of the Debtors other than Assumed Obligations pursuant to the Agreement.

30.     The Buyer is not a "successor" to the Debtors or their estates by reason of any theory of law or equity, and the Buyer shall not assume, nor be deemed to assume, or in any way be responsible for any liability or obligation of any of the Debtors and/or their estates including, but not limited to, any bulk sales law, successor liability or similar liability except as otherwise expressly provided in the Agreement. Except to the extent the Buyer assumes the Assumed Obligations pursuant to the Agreement, neither the purchase of the Assets by the Buyer

or its affiliates, nor the fact that the Buyer or its affiliates are using any of the Assets previously operated by the Debtors, will cause the Buyer or any of its affiliates to be deemed a successor in any respect to the Debtors' businesses within the meaning of any foreign, federal, state or local revenue, pension, ERISA, tax, labor, employment, environmental, or other law, rule or regulation (including without limitation filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine, or under any product warranty liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine. Buyer and its affiliates shall have no liability or obligation under the WARN Act (29 U.S.C. §§ 210 et seq.) or the Comprehensive Environmental Response Compensation and Liability Act, or any foreign, federal, state or local labor, employment, or environmental law by virtue of the Buyer's purchase of the Assets or assumption of the Assumed Obligations.

31.     Pursuant to Bankruptcy Code §§ 105 and 363, all persons and entities, including, but not limited to, the Debtors, all debt security holders, equity security holders, the Debtors' employees or former employees, governmental, tax and regulatory authorities, lenders, parties to or beneficiaries under any benefit plan, trade and other creditors asserting or holding a Lien, Claim or Encumbrance of any kind or nature whatsoever against, in or with respect to any of the Debtors or the Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to the Debtors, the Assets, the operation of the Debtors' businesses prior to the Closing Date or the transfer of the Assets to the Buyer, shall be forever barred, estopped, and permanently enjoined from asserting, prosecuting or otherwise pursuing such Lien, Claim or Encumbrance against the Buyer or any affiliate, successor or assign thereof

19

and each of their respective current and former members, officers, directors, managed funds, investment advisors, attorneys, employees, partners, affiliates and representatives (each of the foregoing in its individual capacity), or the Assets.

32. Nothing in this Order or the Agreement releases, nullifies, precludes, or enjoins the enforcement of any liability to a federal governmental unit of the United States under police and regulatory statutes or regulations against any entity as the operator of property after the date of entry of this Order; provided, however, that the Buyer and its successors, subsidiaries, affiliates, agents and assigns shall have no liability whatsoever to any governmental units or entity or third-party, including any liability for investigation, remediation, monitoring or natural resource damages, (i) arising out of or relating to the generation, transport, or arranging for transport, recycling, handling, treatment, storage, disposal or release of wastes, substances or materials to or at any third-party location prior to the Closing Date or (ii) for any fines or penalties for any days, prior to the Closing Date, of a violation of or non-compliance with environmental, health or safety laws by the Debtors, their predecessors, subsidiaries, affiliates or agents or with respect to the Assets purchased pursuant to the Agreement. Nothing in this Order is, or shall be deemed or construed to be, an admission of liability by the Debtors under either of the immediately foregoing subclauses (i) and (ii) of this paragraph.

33. Subject to the terms of the Agreement, the Agreement and any related agreements may be waived, modified, amended, or supplemented by agreement of the Debtors and the Buyer, without further action or order of the Court; provided, however, that any such waiver, modification, amendment, or supplement is not material and substantially conforms to, and effectuates, the Agreement and any related agreements.

34.     The failure specifically to include any particular provisions of the Agreement or any related agreements in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court, the Debtors and the Buyer that the Agreement and any related agreements are authorized and approved in their entirety with such amendments thereto as may be made by the parties in accordance with this Order prior to Closing.

35.     No bulk sale law or any similar law of any state or other jurisdiction shall apply in any way to the sale and the transactions contemplated by the Agreement.

36.     To the extent any provisions of this Order conflict with the terms and conditions of the Agreement, this Order shall govern and control.

37.     Nothing in this Order shall alter or amend the Agreement and the obligations of the Debtors and Buyer thereunder.

38.     This Order and Agreement shall be binding upon and govern the acts of all Persons and entities, including without limitation, the Debtors and the Buyer, their respective successors and permitted assigns, including, without limitation, any Chapter 11 trustee hereinafter appointed for the Debtors' estates or any trustee appointed in a Chapter 7 case if this case is converted from Chapter 11, all creditors of any Debtor (whether known or unknown), filing agents, filing officers, title agents, recording agencies, secretaries of state, and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register, or otherwise record or release any documents or instruments or who may be required to report or insure any title in or to the Assets.

39.     The provisions of this Order are non-severable and mutually dependent.

40.     Notwithstanding Bankruptcy Rules 6004, 6006 and 7062, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing.

21

In the absence of any person or entity obtaining a stay pending appeal, the Debtors and the Buyer are free to close under the Agreement at any time, subject to the terms of the Agreement. In the absence of any person or entity obtaining a stay pending appeal, if the Debtors and the Buyer close under the Agreement, the Buyer shall be deemed to be acting in "good faith" and shall be entitled to the protections of Bankruptcy Code § 363(m) as to all aspects of the transactions under and pursuant to the Agreement if this Order or any authorization contained herein is reversed or modified on appeal.

41.     This Court shall retain exclusive jurisdiction to enforce the terms and provisions of this Order, the Bidding Procedures Order, the Agreement in all respects and to decide any disputes concerning this Order, the Agreement, or the rights and duties of the parties hereunder or thereunder or any issues relating to the Agreement and this Order including, but not limited to, the interpretation of the terms, conditions and provisions hereof and thereof, the status, nature and extent of the Assets and any Assumed Section 365 Contracts and all issues and disputes arising in connection with the relief authorized herein, inclusive of those concerning the transfer of the assets free and clear of all Liens, Claims and Encumbrances. To the extent there are any inconsistencies between the terms of this Order and the Agreement, the terms of this Order shall control.

42.     Notwithstanding any other provision of this Order, the Debtors shall be authorized to transfer the Unit to the Buyer as an Acquired Asset under the Agreement only after the Debtors have taken title to the Unit in compliance with the agreements described in paragraph DD of the Court's findings above.

43.     Notwithstanding anything to the contrary contained in the Agreement or this Order, (i) the Water Treatment System BW #133/BMWD Pump Station ("the Booster

Pump") included in the Agreement as an asset of the Debtors' estates, and the building at the Avenal Water Treatment facility, shall be excluded from the assets sold pursuant to the Agreement, and Booster Pump's present ownership shall be reserved and (ii) the alleged Building and Service Agreement a/k/a Water Services Agreement by and between Debtors and BMWD for the Avenal Facility shall not be deemed modified or assumed and assigned until further agreement of the parties or Order of the Court.

44. Notwithstanding anything to the contrary in the Agreement or this Order, the Debtors shall not sell, transfer, compromise or otherwise prejudice in any manner, by entry of this Order, any of the assets owned by VL Capital, LLC ("VL Capital") that relate to the sale and lease-back transaction entered into by and between the Debtors and VL Capital. Moreover, the entry of this Order shall not be deemed or construed to authorize the assumption and assignment of any of the agreements entered into by and between the Debtors and VL Capital in connection with the sale and lease-back transaction (collectively, the "VL Capital Agreements"). For purposes of clarity, the VL Capital Agreements do not include any water services agreements or other contracts between the Debtors and any of their customers (the "Service Contracts"), while VL Capital disagrees. This Order does not assign or purport to assign to any entity the rights under the Service Contracts already assigned to, or which were to be assigned to, VL Capital under the VL Capital Agreements in writing. To the extent that any of the Service contracts are assigned by this Order, all such rights of VL Capital under the Service Contracts are specifically preserved and reserved and any assignee of the Service Contracts takes such assignment subject in all respects to any rights of VL Capital.

45. Notwithstanding anything to the contrary in the Agreement, this Order, the Bid Procedures Order, the Sale Motion, the Assignment and Assumption Agreement, or the cure

23

notice, the entry of this Order shall not be deemed or construed to authorize the assumption and assignment of the VL Capital Agreements and the VL Capital Agreements shall not constitute Assumed Section 365 Contracts for purposes of this Order, and as such, the entry of this Order shall not serve as a determination of the prepetition Cure Amounts and any determination of such amounts shall be made at a subsequent hearing to the extent that the Debtors may, in the future, seek to assume and assign the VL Capital Agreements. The provisions of this Order shall not prejudice the rights of VL Capital, the Debtors, or the Buyer pursuant to sections 363 or 365 of the Bankruptcy Code.

Dated: August 28, 2009
      Wilmington, Delaware

Mary F. Walrath
United States Bankruptcy Judge